**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **ECLIPSE IP LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 2:15-cv-00264** |
| | § | |
| **GIFTPORTS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**REURGED MOTION TO DISMISS FOR FAILURE TO**
**STATE A CLAIM PURSUANT TO 35 U.S.C. § 101**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF THE ISSUE........................................................................... 2

III.    BACKGROUND ................................................................................................. 2

IV.     LEGAL STANDARD.......................................................................................... 4

        A.      Motion to Dismiss For Failure to State a Claim Is a Proper Vehicle to
                Challenge Facially Deficient Patents .................................................... 4

        B.      Patentable Subject Matter under 35 U.S.C. § 101 ................................. 6

V.      ARGUMENT ...................................................................................................... 8

        A.      The Claims of the '899 Patent Are Directed Toward An Abstract Idea ................. 8

        B.      The '899 Patent Offers No Inventive Concept or Transformative Elements........ 11

        C.      The System Claims Fall with the Method Claims ................................. 17

        D.      The '899 Patent Is Best Invalidated at the Motion to Dismiss Stage ..................... 18

        E.      Eclipse's First-Amended Complaint Fails to Raise a Plausible Claim
                for Relief ............................................................................................... 19

VI.     CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ........................................................................................ *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 4, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 4, 19

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010) .................................................................................. 6, 18

*Clear with Computers, LLC v. Altec Indus., Inc.*,
    No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 2, 2015) ................................... *passim*

*CLS Bank Int'l v. Alice Corp*,
    717 F.3d 1269 (Fed. Cir. 2013) (Lourie, J., concurring) ................................... 18

*CMG Fin. Servs., Inc. v. Pacific Trust Bank, F.S.B.*,
    No. CV-11-10344-PSG, 2014 WL 4922349 (C.D. Cal. Aug. 29, 2014) ........................... 5

*Cyberfone Sys. LLC v. CNN Interactive Grp., Inc.*,
    558 Fed. App'x 988 (Fed. Cir. 2014) ............................................................. 13

*DDR Holding, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ..................................................................... 8

*DietGoal v. Bravo Media*, No. 13-CV-8391-PAE,
    2014 WL 3582914 (S.D.N.Y. Jul. 8, 2014) ........................................................ 5

*Eclipse IP LLC v. Kewill, Inc.*,
    2:15-cv-00265-JRG-RSP ............................................................................... 2

*Eclipse IP LLC v. Lenox Corp.*,
    2:15-cv-00130-JRG-RSP ............................................................................... 2

*Eclipse IP LLC v. McKinley Equip. Corp.*,
    No. SACV 14-742-GW(AJWx), 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ........ *passim*

*Eclipse IP LLC v. Multi Grp. Logistics, Inc.*,
    2:15-cv-00132-JRG ..................................................................................... 2

*Eclipse IP LLC v. Puma N. Am., Inc.*,
    2:15-cv-00266-JRG-RSP ........................................................................... 2

*Enfish, LLC v. Microsoft Corp.*,
    No. 2:12-cv-07360-MRP-MRW, 2014 WL 5661456 (C.D. Cal. 2014) ........................... 7

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*,
    No. 1201736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) (Burke, Mag. J.) ...... 5

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ................................................................................. 7

*I/P Engine, Inc. v. AOL Inc.*,
    576 Fed. App'x 982 (Fed. Cir. 2014) ....................................................... 5, 19

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) (en banc) .............................................. 5, 18, 19

*Lovelace v. Software Spectrum*,
    78 F.3d 1015 (5th Cir. 1996) ................................................................... 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ................................................................... *passim*

*Planet Bingo, LLC v. VKGS LLC*,
    576 Fed. App'x 1005 (Fed. Cir. 2014) ...................................................... 3, 7

*UbiComm, LLC v. Zappos IP, Inc.*,
    No. 13-1029-RGA, 2013 WL 6019203 (D. Del. Nov. 13, 2013) ................................ 5

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .......................................................... *passim*

*Uniloc USA, Inc. v. Rackspace Hosting, Inc.*,
    18 F. Supp. 3d 831 (E.D. Tex. 2013) ...................................................... 5, 19

**Statutes**

35 U.S.C. § 101 ...................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................... 4

## I.      INTRODUCTION

Patent law does not protect abstract ideas. 35 U.S.C. § 101; *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The patent-at-issue—U.S. Patent No. 7,479,899 (the "'899 Patent")—is directed to an abstract idea and provides no inventive step to warrant its patentability under 35 U.S.C. § 101. Because the '899 Patent fails at this threshold inquiry, Defendant Giftports, Inc. ("Giftports") moves to dismiss the case for failure to state a claim.

The claims of the '899 Patent are directed to the abstract idea of notifying a person of the status of a delivery or pickup. To this abstract idea, the claims add no inventive concept. Rather, they merely recite generic or conventional computer or communications equipment, which is insufficient to transform an abstract idea into a patentable invention.

The Central District of California recently considered similar claims from three related patents[1] by the same patent owner, Eclipse IP LLC ("Eclipse") and found the claims to be invalid under Section 101 on a 12(b)(6) motion to dismiss. *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742-GW(AJWx), 2014 WL 4407592, at *12 (C.D. Cal. Sept. 4, 2014). Like the claims at issue in *McKinley*, the claims of the '899 Patent fail to satisfy either prong of the *Alice* framework for patentable subject matter because the claims are directed to an abstract idea and contain no inventive concept. Therefore, dismissal of the suit against Giftports is proper because the First-Amended Complaint fails to state a claim upon which relief may be granted.

---

[1]  *McKinley* involved U.S. Patent Nos. 7,064,681 (the "'681 Patent"); 7,113,110 (the "'110 Patent"); and 7,119,716 (the "'716 Patent"). *McKinley*, 2014 WL 4407592, at *1. Because the '899, '681, and '110 Patents are all continuations of the '716 Patent's application, the '899 Patent at issue here shares a common specification with the '681 Patent, the '110 Patent, and '716 Patent.

## II.    STATEMENT OF THE ISSUE

Whether the claims of the asserted '899 patent are invalid under 35 U.S.C. § 101 when the claims are directed to the abstract idea of notifying a person of the status of a delivery or pickup and fail to contain an inventive concept that transforms them into a patent-eligible invention.

## III.    BACKGROUND

On February 24, 2015, Eclipse filed suit against Giftports alleging that Giftports infringes the '899 Patent[2] by "making, using, offering for sale, and/or selling computer-based notification systems and methods."  (Dkt. No. 1, at 2.)  On April 24, 2015, the Court consolidated the suit against Giftports with four other cases[3] and designated the Giftports case as the lead case.  (Dkt. No. 12, at 1.)  On May 8, 2015, Giftports filed its Motion to Dismiss for Failure to State a Claim Pursuant to 35 U.S.C. § 101.  (*See* Dkt. No. 15.)  On May 26, 2015, Eclipse filed its First-Amended Complaint, adding language relating to Giftport's motion to dismiss.  (*See* Dkt. No. 17.)  Because invalidity under 35 U.S.C. § 101 is a legal issue to be decided by the Court and is not cured by Eclipse's Amended Complaint, Giftports reurges its motion to dismiss.

Generally, the '899 Patent claims relate to systems and methods for notifying a person based on the location of a thing.  The '899 Patent was filed on June 2, 2004 and issued on January 20, 2009.  There are 22 claims in the '899 Patent and each one fails to satisfy the two-prong eligibility test described in *Alice*.  Of the 22 claims, two are independent claims: claim 1 is

---

[2]  The '899 Patent is entitled "Notification Systems and Methods Enabling a Response to Cause Connection Between a Notified PCD and a Delivery or Pickup Representative."
[3]  *Eclipse IP LLC v. Kewill, Inc.*, 2:15-cv-00265-JRG-RSP; *Eclipse IP LLC v. Lenox Corp.*, 2:15-cv-00130-JRG-RSP; *Eclipse IP LLC v. Multi Grp. Logistics, Inc.*, 2:15-cv-00132-JRG; *Eclipse IP LLC v. Puma N. Am., Inc.*, 2:15-cv-00266-JRG-RSP. On May 26, 2015, Puma and Eclipse filed a joint motion to stay deadlines and notice of settlement. (Dkt. No. 18.)

a method claim and claim 11 is the corresponding system claim.  As discussed below, because

claim 11 is the corresponding system claim to claim 1, it falls with claim 1.[4]  For comparison,

both are reproduced below with their similarities emphasized:

| 1. A method for *an automated notification system, comprising the steps of*: | 11. *An automated notification system, comprising the steps of*: |
|---|---|
| [a] *monitoring travel data in connection with a mobile thing that is destined to pickup or deliver an item at a stop location*; | [a] means for *monitoring travel data in connection with a mobile thing that is destined to pickup or deliver an item at a stop location*; |
| [b] causing *initiation of a notification communication to a personal communications device based upon the travel data; and* | [b] means for *initiating a notification communication to a personal communications device based upon the travel data; and* |
| [c] *during the notification communication, enabling a* first *party associated with the personal communications device to select whether or not to communicate with a second party having access to particulars of the pickup or delivery*. | [c] means for *enabling a party associated with the personal communications device during the notifications communications to select whether or not to communicate with a second party having access to particulars of the pickup or delivery*. |

As evident from the comparison, claim 11 recites a system that merely has the "means

for" executing each step of claim 1's method.  Similarly, dependent method claims 2-10 have

corresponding system claims 12-20.[5]  Finally, claims 21 and 22 are system claims that each

depend on claim 11 and merely require that "the system is implemented with one or more

computers" or "the system is embodied on one or more computer media," respectively.

---

[4]  *See Alice*, 134 S. Ct. at 2360 ("Put another way, the system claims are no different from the method claims in substance. . . . This Court has long warned against interpreting § 101 in ways that make patent eligibility depend on the draftsman's art. . . . Holding that the system claims are patent eligible would have exactly that result."  (citation, alterations, and internal quotations marks omitted)); *see also Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005, 1007-08 (Fed. Cir. 2014) (agreeing with district court which found that there is no meaningful distinction between the method and system claims at issue).

[5]  Claim 2-5 correspond to claims 12-15, respectively.  Claims 6-9 correspond to claims 17-20, respectively.  And claim 10 corresponds to claim 16.

Generally, each independent claim recites three steps:  (1) monitoring where something is, (2) notifying somebody based on where that something is, and (3) enabling the person receiving the notification to communicate with someone having information about the thing.  Significantly, the claims fail to claim any new software or computer technology.  The independent claims fail to even indicate that a computer is required to perform the method claimed.[6]  In fact, claims 21-22 make clear that the systems claimed only require implementation on generic computers performing routine functions.  Meanwhile, like the independent claims, the dependent claims offer no inventive step to transform the claims from an ineligible abstract idea.  The dependent claims also do not claim any new software or computer technology, but rather focus on who is communicating and what is being communicated.[7]  As described below, every claim of the '899 Patent fails the two-prong framework for Section 101 eligibility as defined by Supreme Court and Federal Circuit precedents.

## IV.   LEGAL STANDARD

### A.   Motion to Dismiss For Failure to State a Claim Is a Proper Vehicle to Challenge Facially Deficient Patents

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief may be granted.  A complaint should be dismissed if it fails to provide sufficient factual allegations to show that the plaintiff is plausibly entitled to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007) (requiring plaintiff to plead "enough facts to state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal,*

---

[6]   Notification system is defined in the '899 Patent as:  "any type of notification service or system, messaging system, information system, data communications system, or tracking system . . . (all referred to herein as 'notification system')."  '899 Patent 8:33-37.

[7]   *See, e.g.*, '899 Patent, claim 2 (". . . causing a communicative coupling between the personal communications device of the first party and communications device associated with the second party . . .");  '899 Patent, claim 6 ("wherein the particulars include a reason why the mobile thing is to stop at the stop location.").

556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  In deciding a Rule 12(b)(6) motion, courts may consider documents attached or incorporated into the complaint as well as the allegations in the complaint.  *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996).  While factual allegations must be taken as true on a Rule 12(b)(6) motion to dismiss, legal conclusions and conclusory statements are not entitled to the presumption of truth.  *Iqbal*, 556 U.S. at 678-79.

Determinations of Section 101 validity may be properly determined at the Rule 12(b)(6) motion to dismiss stage.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) (affirming the district court's invalidation under Section 101 at the motion to dismiss stage); *McKinley*, 2014 WL 4407592, at *1, *12 (invalidating claims of patents related to the '899 Patent at the motion to dismiss stage).[8]  Indeed, patentability under 35 U.S.C. § 101 is a

---

[8]  As one Federal Circuit Judge noted:

> From a practical perspective, there are clear advantages to addressing section 101's requirements at the outset of litigation.  Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and court years of needless litigation.

*I/P Engine, Inc. v. AOL Inc.*, 576 Fed. App'x 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring). *See, e.g.*, *Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 WL 993392, at *4 (E.D. Tex. Mar. 2, 2015) (finding that no material factual disputes prevented the court from deciding the Section 101 issue at the motion to dismiss stage); *Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, 18 F. Supp. 3d 831, 834 (E.D. Tex. 2013) (granting motion to dismiss for failure to allege infringement of a patentable claim under Section 101); *see also, e.g.*, *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 1201736-LPS-CJB, 2014 WL 4379587, at *6, *14 (D. Del. Sept. 3, 2014) (Burke, Mag. J.) (recommending granting Section 101 motion prior to claim construction is appropriate where no disputed areas of fact are relevant to the motion); *CMG Fin. Servs., Inc. v. Pacific Trust Bank, F.S.B.*, No. CV-11-10344-PSG, 2014 WL 4922349, at *6 (C.D. Cal. Aug. 29, 2014) (claim construction is not a prerequisite to a determination of validity under Section 101); *DietGoal v. Bravo Media*, No. 13-CV-8391-PAE, 2014 WL 3582914, at *15 (S.D.N.Y. Jul. 8, 2014) (finding that Section 101 issues were ripe prior to claim construction where the claims were straightforward and claim construction would not shed light on any dispositive legal issue); *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029-RGA, 2013 WL

threshold and legal issue.  *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (en banc), *aff'd*, *Bilski v. Kappos*, 130 S. Ct. 3218 (2010).  To be actionable, a patent's claims must be drawn to patent-eligible subject matter under Section 101.  *See id.* at 950.  Indeed, the *McKinley* court, when addressing related patents with a common specification to the asserted '899 Patent, found that no material factual or legal disputes prevented a Section 101 determination at the motion to dismiss stage.  *McKinley*, 2014 WL 4407592, at *5-6 (finding that Eclipse's argument that the Court needs to conduct claim construction first "decidedly fails").

### B.    Patentable Subject Matter under 35 U.S.C. § 101

Section 101 recognizes four categories of patentable subject matter:  "any new or useful process, machine, manufacture, or composition of nature."  35 U.S.C. § 101.  While broad in scope, the law recognizes three exceptions to patent eligibility:   "[l]aws of nature, natural phenomena, and abstract ideas."  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).  These exceptions "'are the basic tools of scientific and technological work.'   And monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (citation omitted); s*ee Bilski v. Kappos*, 130 S. Ct. 3218, 609-10 (2010); *McKinley*, 2014 WL 4407592, at *7 ("There are likely a myriad number of ways to do so, and the '681 Patent preempts them all.").

In *Alice*, the Supreme Court confirmed the two-step test to determine whether a patent claim is impermissibly directed toward an abstract idea.  *Id.* at 2355.  First, the court must determine whether the claims at issue are directed to a patent-ineligible abstract idea.  *Id.*  If so,

---

6019203, at *6 (D. Del. Nov. 13, 2013) (holding patent invalid as an abstract idea pursuant to Rule 12(b)(6)).

the second step requires the court to examine whether the claims at issue contain an inventive concept that transforms the abstract idea into a patent-eligible invention. *Id.* at 2355, 2357.

For the first step, the court must first identify "the purpose of the claim – in other words, determine what the claimed invention is trying to achieve – and ask whether that purpose is abstract." *Enfish, LLC v. Microsoft Corp.*, No. 2:12-cv-07360-MRP-MRW, 2014 WL 5661456, at *4 (C.D. Cal. 2014); *see Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 WL 993392, at *4 (E.D. Tex. Mar. 2, 2015) (determining the abstract idea of the claims at issue based on their conceptual elements).

Once it is determined that the claims at issue embody an abstract idea, then each claim—when its limitations are considered individually and as an ordered combination—must contain an inventive concept in order to transform the abstract idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2355, 2357. It is insufficient for a claim to simply state an abstract idea while adding the words "apply it." *Id.* at 2357 (quoting *Mayo*, 132 S. Ct. at 1294); *see Ultramercial*, 772 F.3d at 715 ("A claim that recites an abstract idea must include additional features that must be more than well-understood, routine, conventional activity." (quoting *Alice*, 134 U.S. at 2357) (internal quotation marks omitted)). Likewise, "introduction of a computer into the claims does not alter the analysis . . . ." *Alice*, 134 S. Ct. at 2357. In other words, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358.

In *Planet Bingo*, the Federal Circuit recognized that a claim that recites a process that can be performed by a human using a pen and paper is indicative of a conventional application of an abstract idea that is ineligible for patent protections. *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005, 1007-08 (Fed. Cir. 2014) (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)); *see*

*McKinley*, 2014 WL 4407592, at *6 (noting that all the steps of the claim-at-issue could be performed by a person talking on the phone); *see also Clear with Computers*, 2015 WL 993392, at *4 (noting that the claims at issue "could easily be performed by a human").  While claims may be salvaged by purporting to improve the functioning of the computer itself or by being necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks, a claim that does neither cannot rely on generic computer functions to transform itself from a patent ineligible abstract idea to a patent-eligible invention. *See Clear with Computers*, 2015 WL 993392, at *5 (noting that the claims at issue neither purport to improve functionality nor are necessarily rooted in computer technology to overcome a computer-specific problem (quoting *Alice*, 134 S. Ct. at 2359; *DDR Holding, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)).  Automated or automatic functions on a computer are not sufficient to provide an inventive concept to an abstract idea.  *Id.* ("A general purpose computer with minimal programming can perform functions 'automatically' and 'dynamically,' and implementation of an abstract idea on such a computer is not an inventive concept."  (citing *Alice*, 134 S. Ct. at 2358)).

## V.    ARGUMENT

Like the claims of Eclipse's related patents in *McKinley*, the claims of the '899 Patent fail because (1) they are directed toward an abstract idea—notifying a person of the status of a delivery or pickup —and (2) they offer no inventive step.

### A.    The Claims of the '899 Patent Are Directed Toward An Abstract Idea

The claims of the '899 Patent are directed toward the abstract idea of notifying a person of the status of a delivery or pickup.  As noted above, claim 1 of the '899 Patent has three steps:

[a]    monitoring travel data in connection with a mobile thing that is destined to pickup or deliver an item at a stop location;

[b]    causing initiation of a notification communication to a personal communications device based upon the travel data; and

[c]    during the notification communication, enabling a first party associated with the personal communications device to select whether or not to communicate with a second party having access to particulars of the pickup or delivery.

All of these steps can be performed by someone simply talking on the phone, a walkie-talkie, or a CB radio.  For example, a truck driver is supposed to call in to the dispatcher when he reaches a certain distance from the location of his delivery so [a] he monitors travel data of the mobile thing[9] (e.g. sees that his truck is 15 miles away from the delivery location), [b] he initiates a notification communication (e.g. calls or radios in to dispatch, "Dispatch, I am 15 miles outside the location of the delivery"), and [c] dispatch is enabled to select whether to communicate with the driver on the particulars of the delivery (e.g. not responding or responding, "What's your ETA?" or "What is the delivery address?").

The scope of this claim is so expansive that it would encompass and claim all forms of this abstract idea.  In other words, the claim reads on the entire concept with no direction toward a specific and inventive implementation, but instead can be implemented on a variety of conventional equipment.   In fact, the *McKinley* court found that very similar claims for monitoring travel data and conducting notifications communications were directed to an abstract

---

[9]  The '899 Patent uses the following examples for "mobile thing":

[A] motor vehicle, such as an automobile, motorcycle, truck, bus, limousine, or taxicab, a bicycle, an aircraft such as an airplane, helicopter, balloon, or rocket, a train, a water vehicle such as a cruise ship, cargo ship, or other boat/ship, a package, a human being, an animal, an electronic email or transmission, an amusement park vehicle, or any other thing capable of being moved across or through the Earth's surface and/or atmosphere.

'899 Patent 9:65-10:6.

idea.  *See McKinley*, 2014 WL 4407592, at *9-10 (finding that Claim 41 of the '716 Patent[10] is directed to an abstract idea).

The dependent claims—claims 2-10—are directed to the same abstract idea with minor variations.  Specifically, claim 2 merely adds the step to claim 1 of creating a communicative coupling (e.g. answering the phone call/responding to the radio) between the person receiving the notification (e.g. dispatch) and a person with information (e.g. truck driver).  Claim 3 is like claim 2 but the communicative coupling (e.g. answering the phone call/responding to the radio) is between the person receiving the notification (e.g. dispatch) and the person associated with the mobile thing (e.g. truck driver).  Claim 4 adds to claim 1 the step of providing the work order (e.g. during the phone call, giving the order number and delivery details).  Claim 5 adds to claim 4 the step of indicating that the work order is proper (e.g. dispatch confirming to the driver that the details are correct).  Claim 6 requires the "particulars" include a reason why the mobile thing is to stop (e.g. truck driver knows that he is stopping there to deliver an certain object).  Claims 7-9 each add to claim 1 steps of either altering, adding to, or deleting from a work order in response to the communication (e.g. truck driver edits his delivery instructions:  change of delivery address, additional delivery stops, or fewer delivery stops).  And finally, claim 10

---

[10]  Claim 41 of '716 Patent is a computer-based notification system with the steps of:
> [a] monitoring travel data associated with a mobile thing;
> [b] initiating a first notification communication to a personal communications device associate [sic] with a party based upon the relationship of the mobile thing to a location;
> [c] receiving a response communication from the party's personal communications device;
> [d] refraining from sending notification communications to the party's personal communications device after receiving the response communication; and
> [e] initiating a second notification communication to the party's personal communications device, one or more other personal communications devices, or both, based upon the upon the [sic] relationship of the mobile thing or another mobile thing to the location or another location.

*McKinley*, 2014 WL 4407592, at *9-10 (quoting '716 Patent, claim 41).

requires that the notification occurs a predetermined distance from the stop location (e.g., like in claim 1, driver must call when 15 miles away from delivery).[11]

The additional step in each dependent claim is insubstantial.  The only changes are who is communicating with the person receiving the notifications (e.g. a party associated with a mobile thing (claim 3)) and potential effects of the communication (e.g. correcting information in a work order (claim 7)).  Even with the additional steps, each of the dependent claims is still directed to the same abstract idea of notifying a person of the status of a delivery or pickup of an item.

Therefore, the claims of the '899 Patent are directed to an abstract idea and fail to satisfy the first prong of the *Alice* framework.

### B.      The '899 Patent Offers No Inventive Concept or Transformative Elements

Because the claims of the '899 Patent fail the first prong of the *Alice* framework, the second prong requires examination of the claims to determine whether they contain an inventive concept sufficient to transform them from ineligible abstract ideas to patent-eligible inventions. *Alice*, 134 S. Ct. at 2355, 2357.  The '899 Patent claims contain no such inventive concepts.  At most, the claims apply the recitation of a generic or wholly conventional computer or communications device to the abstract idea of notifying a person of the status of a delivery or pickup, which is insufficient to transform the abstract idea into a patent-eligible invention. *Id.* at 2358.

---

[11]  As explained in *McKinley*, rejecting the similar Claim 41 of the '716 Patent, the steps were all directed to routine communications about a thing:

> In the above example, [the monitoring travel data step] just adds Ted looking outside to see whether the trash can is now out at the curb. Or, the hotel calling the room to let a guest know that the bags have not yet arrived, and then calling again once they have. Or that the car is now at the valet stand. . . . The Court would therefore find that '716 Patent claim 41 also fails § 101.

*McKinley*, 2014 WL 4407592, at *10.

As explained above, every step of independent claim 1 can be performed by a person using a telephone, CB radio, walkie-talkie, or other communication device. Nothing in the claim could be considered a transformative element, nor does the claim as a whole contain an inventive concept. A truck driver and a dispatcher could satisfy every step of claim 1. Even if the preamble of claim 1 is limiting, the reference to an "automated notification system" is insufficient to transform the claim into a patent-eligible invention. *See Clear with Computers*, 2015 WL 993392, at *5 ("A general purpose computer with minimal programming can perform functions 'automatically' . . . ."). Such a reference does not "provide any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself." *Alice*, 134 S. Ct. at 2358 (quoting *Mayo*, 132 S. Ct. at 1297). The *McKinley* court addressed a similar preamble to that of claim 1 of the '899 Patent when it considered the preamble of claim 1 of the related '681 Patent. Claim 1 of the '681 Patent claimed a method for communications "in connection with a computer-based notification system." *McKinley*, 2014 WL 4407592, at *6 (quoting claim 1 of the '681 Patent). In considering whether this language of the preamble was sufficient to transform the claim and its dependent claims into patent-eligible inventions, the court concluded:

> The claims also direct that the method be performed "in connection with a computer system." There are likely a myriad number of ways to do so, and the '681 Patent preempts them all. The claims capture that broad scope without any "inventive concept" or other limiting principle. Of course, the computers used to implement the idea will have to be "specially programmed" to carry out the instructions. But that is true of all computer-implemented inventions. A patent applicant may not "claim any principle of the physical or social sciences by reciting a computer system configured to implement the relevant concept."

*Id.* at *7 (quoting *Alice*, 134 S. Ct. at 2359). For the same reasons, the "automated notification system" recited in the preamble of claim 1 of the '899 Patent does not add an inventive concept sufficient to transform claim 1 (or its dependent claims) into a patent-eligible invention.

The *McKinley* court also rejected Eclipse's argument that the related '681 Patent's recitation of the term "personal communications device" ("PCD") in the claims saved them from patent ineligibility by requiring a "specially-equipped PCD." *Id.* at *6-7 ("[T]he specification belies Eclipse's argument that the claims require a 'specially-equipped PCD.'").  In rejecting Eclipse's argument, the court pointed to the specification, which broadly described personal communications devices to include non-limiting examples like "'a personal computer (PC) capable of displaying the notification through e-mail or some other communications software, a television, a wireless (e.g. cellular, satellite, etc.) or non-wireless telephone, a pager, a personal data assistant, a navigation system in a motor vehicle, a radio receiver or transceiver, or any other device capable of notifying the user with some type of perceptible emission.'" *Id.* (quoting '681 Patent 19:21-28).  The McKinley court concluded that "the claims, read in light of the specification, were deliberately drafted to recite hardware in only the most generic sense. Recitation of such generic hardware is insufficient [to transform the claims from abstract ideas into patent-eligible inventions]. . . ." *McKinley*, 2014 WL 4407592, at *7 (discussing the specification shared between the '681 and '899 Patents); *see also Cyberfone Sys. LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x 988, 993 (Fed. Cir. 2014) (unpublished) (holding that a conventional telephone is "not a specific machine, and adds nothing of significance to the claimed abstract idea.").  Because the '899 Patent shares the same specification with its related '681 Patent, the '899 Patent also contains the same broad description of "personal communications devices." *See* '899 Patent 18:48-55.  As with the '681 Patent, the claims of the '899 Patent are not transformed into patent-eligible inventions by their recitation of a "personal communications device."

Claim 2 depends from claim 1 and requires the additional "step of, based upon a selection by the first party and causing a communicative coupling between the personal communications device of the first party and a communications device associated with the second party having access to particulars of the pickup or delivery."  As noted above, this step can be performed by a truck driver and dispatch with telephones, where dispatch can decide whether to answer the phone and cause the "communicative coupling" between the two people.  Like claim 1, the references to "personal communications device" and "communications device" cannot transform the abstract idea of claim 2 into a patent-eligible invention.  Also, "communicative coupling" is a conventional and routine action for a personal communications device like a conventional telephone.  Claim 2 adds no inventive concept and is therefore unpatentable under 35 U.S.C. § 101.

Claim 3 depends from claim 1 and further requires the "step of, based upon a selection by the first party, causing communicative coupling between the personal communications device of the first party and a second personal communications device associated with the mobile thing or person in the mobile thing."  Claim 3 fails to meet the requirements of Section 101 for the same reasons as claim 2.  Claim 3 can be performed by the truck driver and dispatch with telephones, and the "personal communications device" and "communicative coupling" are references to generic and conventional technology and are insufficient to transform the claim into a patent-eligible invention.

Claim 4 depends from claim 1 and requires the "step of, during the notification communication, providing a message that includes a work order."  Claim 4, again, can be performed by the truck driver and dispatch with telephones as the truck driver reads out his work order or any other description of the work.  Claim 4 adds no inventive concept but only

additional information or messages that must be provided through the steps.  Therefore, claim 4 fails to satisfy 35 U.S.C. § 101.

Claim 5 depends from claim 4 and further adds the "step of enabling the first party to select another option that indicates to the notification system that work order is proper."  Claim 5 is the equivalent of the dispatch receiving the truck driver's work order during the phone call and confirming that it is correct.  Thus, there is no transformative element added to claim 5.  Like the other claims of the '899 Patent, claim 5 comprises only a "conventional step[], specified at a high level of generality, which is insufficient to supply an inventive concept."  *Ultramercial*, 772 F.3d at 716; *Clear with Computers*, 2015 WL 993392, at *5.

Claim 6 depends from claim 1 and further requires that "the particulars include a reason why the mobile thing is to stop at the stop location."  Claim 6 only requires the driver to know why the truck is stopping at the location (e.g. for the delivery of the object).  There is no additional feature or step at all, much less an inventive concept.  Therefore, claim 6 fails to meet the requirements of Section 101.

Claim 7 depends from claim 1 and requires the "step of correcting information in a work order based upon communication between the first and second parties."  Claim 7 can be done by a human with pen and paper or simply in his mind.  For example, dispatch tells the driver that he is actually supposed to go to 100 Main St. not 110 Main St., and the driver makes a note on his papers or in his mind correcting the error.  No specific device or function is identified to make this correction.  "Adding routine additional steps such as updating an activity log . . . does not transform an otherwise abstract idea into patent-eligible subject matter."  *Ultramercial*, 772 F.3d at 716.  Claim 7 includes no meaningful additional feature to provide practical assurance that it is "'more than a drafting effort to monopolize the [abstract idea] itself.'"  *Alice*, 134 S. Ct. at 2358

(quoting *Mayo*, 132 S. Ct. at 1297).  Claim 7 is therefore not a patent-eligible invention under Section 101.

Claim 8 depends from claim 1 and includes the "step of adding additional task information to a work order based upon communication between the first and second parties." As with claim 7, this additional element can be performed in the human mind or with pen and paper.  For the same reasons that claim 7 fails as a patent-eligible invention, claim 8 also fails.

Claim 9 depends from claim 1 and further includes the "step of deleting task information in a work order based upon communication between the first and second parties."  Like claims 7 and 8, claim 9 can be performed with a pen and paper by a person simply erasing or striking out task information from a work order.  Thus, claim 9 is also not a patent-eligible invention.

Claim 10 depends from claim 1 and further requires that "the notification communication is initiated when the mobile thing is a predetermined proximity in relation to the stop location." Claim 10 suffers from the same infirmities as claim 1.  Claim 1 requires that the initiation of the notification is based on the travel data.  Claim 10 offers no additional feature and does not specify any specific device or function.  Claim 10, like all the claims, comprises only a "conventional step[], specified at a high level of generality, which is insufficient to supply an invention an inventive concept."  *Ultramercial*, 772 F.3d at 716.  Additionally, the *McKinley* court found a nearly identical dependent claim[12] from the related '716 Patent invalid.  *McKinley*, 2014 WL 4407592, at *10.  Therefore, claim 10, like claim 1, does not include an inventive concept and is not a patent-eligible invention.

---

[12]   Claim 43 of the related '716 Patent states "the step of initiating the first notification communication is performed when a mobile thing is a predetermined proximity with respect to the location."  *McKinley*, 2014 WL 4407592, at *10 (quoting '716 Patent, claim 43).

The claims of the '899 Patent "do not purport to improve the functioning of the computer itself" but rather "amount to 'nothing significantly more' than an instruction to apply the abstract idea . . . using some unspecified, generic computer." *Alice*, 134 S. Ct. at 2359-60 (quoting *Mayo*, 132 S. Ct. at 1298). Moreover, the claims neither seek to solve a problem specific to computer networks nor are they necessarily rooted in computer technology. At best, the claims of the '899 Patent require the use of a generic computer. At worst, the claims do not require the use of any computer and are just unfettered abstract ideas. Either way, the claims of '899 Patent are not patent-eligible inventions under Section 101. *See Ultramercial*, 772 F.3d at 715 (invalidating claims in which the "ordered combination of steps recite an abstraction—an idea, having no particular concrete or tangible form").

Because claims 1-10 of the '899 Patent are directed toward an abstract idea and fail to provide any inventive concept sufficient to transform the abstract idea into a patent-eligible invention, each claim is invalid under 35 U.S.C. § 101.

## C.     The System Claims Fall with the Method Claims

As explained in the background section above, system claims 11-20 of the '899 Patent correspond to method claims 1-10 with the system claim reciting "means for" limitations for each step in the corresponding method claim. For example, claim 7 requires the additional "step of correcting information in a work order based upon communication between the first and second parties" while corresponding system claim 18 requires an additional "means for correcting information in a work order based upon communication between the first and second parties." '899 Patent 91:39-41, 92:35-37.

Because claims 11-20 essentially parrot the language of claims 1-10 and are no different in substance, they also fail to meet the requirements of Section 101 for the same reasons. To allow the system claims, while invalidating the method claims would permit applicants to

preempt abstract ideas by a mere drafter's tool.  *See Alice*, 134 S. Ct. at 2360 ("This Court has long warn[ed] . . . against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art."  (quoting *Mayo*, 132 S. Ct. at 1294) (alterations in original) (internal quotation marks omitted)).  System claims 11-20 fail to offer even generic hardware, much less specialized hardware.  As a result, none of the system claims "offer[] meaningful limitation beyond generally linking the use of the method to a particular technological environment, that is, implementation via computers."  *Id.* (quoting *CLS Bank Int'l v. Alice Corp*, 717 F.3d 1269, 1291 (Fed. Cir. 2013) (Lourie, J., concurring)) (alterations and internal quotation marks omitted).

Claims 21 and 22 also fail under Section 101 because they merely require claim 11 to be "implemented with one or more computers" or "embodied on one or more computer media." Claims 21 and 22 make express the implicit deficiencies in the other claims—applying an abstract idea to a generic computer or generic computer media.  "[I]f a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility."  *Alice*, 134 S. Ct. at 2358 (citations, alteration, and internal quotation marks omitted).  For the same reasons above, claims 21 and 22 do not recite patent-eligible inventions under Section 101.

Because system claims 11-22 do not include any inventive concepts that transform the abstract idea of notifying a person of the status of a delivery or pickup into patent-eligible inventions, each claim is invalid under 35 U.S.C. § 101.

## D.     The '899 Patent Is Best Invalidated at the Motion to Dismiss Stage

As noted above, eligibility under Section 101 is a threshold issue and an issue of law.  *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (en banc), *aff'd*, *Bilski v. Kappos*, 130 S. Ct. 3218 (2010).  The court in *McKinley* found that no underlying claim construction or factual issues prevented it from finding claims from Eclipse's three related patents, which share a

common specification with the '899 Patent-in-suit here, invalid at the motion to dismiss stage. *McKinley*, 2014 WL 4407592, at *5-6. Likewise, in this case, the Section 101 analysis does not turn on claim construction or any underlying factual issues.[13] Additionally, the claim language of the '899 Patent is relatively simple and claim construction is unnecessary to determine this motion to dismiss. *See Clear with Computers*, 2015 WL 993392, at *3. Indeed, as noted above, one Federal Circuit judge has extolled the virtues of addressing Section 101 motions at the Rule 12(b)(6) motion stage. *I/P Engine, Inc. v. AOL Inc.*, 576 Fed. App'x 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring).

Because ineligible patents should be "'exposed at the point of minimum expenditure of time and money by the parties and the court,'" and there are no factual or claim construction issues that would prevent the court from substantively ruling on this motion, this case is ripe for disposition at the pleading stage. *Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, 18 F. Supp. 3d 831, 834 (E.D. Tex. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

### E.   Eclipse's First-Amended Complaint Fails to Raise a Plausible Claim for Relief

On May 26, 2015, Eclipse filed its First-Amended Complaint against Giftports (Dkt. No. 17) in response to Giftport's Motion to Dismiss. Like the Original Complaint, the First-Amended Complaint fails to state a claim upon which relief can be granted because the claims of the '899 Patent are invalid under 35 U.S.C. § 101. Eclipse's addition of Paragraphs 9-13 of the Amended Complaint (Dkt. No. 17, at 2-4) cannot salvage the invalid '899 Patent because its legal conclusions are not entitled any presumption of truth. *Iqbal*, 556 U.S. at 678-79; *see also*

---

[13] As in *McKinley*, any argument by Eclipse that the Court needs to conduct claim construction first "decidedly fails." *See McKinley*, 2014 WL 4407592, at *5-6. Because the '899 Patent derives from the common specification to the related patents addressed in *McKinley*, there is no basis for Eclipse to argue against the Court's findings in *McKinley* that claim construction is not required.

*In re Bilski*, 545 F.3d at 951 (noting that invalidity under Section 101 is a legal issue); *McKinley*, 2014 WL 4407592, at *6-7 (rejecting Eclipse's argument that a factual dispute existed and dismissing the complaint at the pleadings stage).  Importantly, the patent at issue has not changed.  As described above, the claims of the '899 Patent fail to comply with 35 U.S.C. § 101, and none of the additional statements in the First-Amended Complaint can rectify that failure.

## VI.    CONCLUSION

Each claim of the '899 Patent is directed to an abstract idea with no inventive concept to meaningfully limit the preemptive effect of the claim and transform the abstract idea into patent-eligible subject matter.  Therefore, each claim of '899 Patent is invalid under 35 U.S.C. § 101. Giftports respectfully requests that this Court grant its Reurged Motion to Dismiss.

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX  75503
Telephone:  (903) 255-1000
Facsimile:  (903) 255-0800
Email:  jdoan@haltomdoan.com

Brent D. McCabe
Texas Bar No. 24088004
HALTOM & DOAN
Preston Park Financial Center West
4975 Preston Park Blvd., Suite 625 West
Plano, TX 75093
Telephone:  (469) 814-0433
Facsimile:  (469) 814-0422
Email:  bmccabe@haltomdoan.com

**ATTORNEYS FOR DEFENDANT
GIFTPORTS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 28th day of May, 2015.


*/s/ Jennifer H. Doan*
Jennifer H. Doan